**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMELL D. SMITH, | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-2890 |
| TARYN WEILER, DOMINIC MARCHIAFAVA, ERIC MIZUNO, M.D., LAKE COUNTY SHERIFF'S OFFICE, WELLPATH LLC, and LAKE COUNTY, ILLINOIS, | Judge Martha M. Pacold |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Defendants Lake County and Lake County Sheriff's Department's motion to dismiss [121][1] the Second Amended Complaint [62] is denied. Defendants Weiler and Marchiafava's motion to dismiss [123] Count I of the Second Amended Complaint [62] is stricken for the purpose of conducting jurisdictional discovery.

**LEGAL STANDARD AND FACTUAL ALLEGATIONS**

Before the court are two motions to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). Unless a complaint fails to "allege 'enough facts to state a claim to relief that is plausible on its face,'" a motion to dismiss should not be granted. *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, in this posture the court checks for "[f]acial plausibility"—in other words, whether "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As part of that plausibility check, the court takes all reasonable inferences in favor of plaintiff. *Ashcroft*, 556 U.S. at 678. Because the propriety of defendants' motions to dismiss turns on plaintiff's allegations, the court begins with a summary of the operative complaint, [62].

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph number citations. Page numbers refer to the CM/ECF page number.

Plaintiff Jamell Smith is "an adult previously incarcerated at" "Lake County Adult Correctional Facility" (hereinafter "Lake County jail") "who is currently incarcerated in the McHenry County Correctional Facility, awaiting trial." [62] ¶ 3. Defendant Lake County Sheriff's Office (hereinafter the "Sheriff's Office") is "a local municipal entity." *Id.* ¶ 7. It is "responsible for the care and medical treatment of inmates in the Lake County jail." *Id.* Lake County "is a municipal entity." *Id.* ¶ 9.

Defendant Weiler is an employee of Wellpath, LLC—"the vendor hired by the Lake County Sheriff's Office to provide medical care at Lake County jail"—and is "the Health Care Administrator for Wellpath." *Id.* ¶ 4. Defendant Marchiafava is "an employee of Wellpath" and is a physician's assistant. *Id.* ¶ 5.

"Wellpath LLC is paid a flat fee for their services," but for "services like specialty care offsite," Wellpath may be obligated to pay for some portion of the services up to $500,000. *Id.* ¶ 31–32. Thus, the "more medical care Wellpath renders that involves hospitalization off site or specialty care, the less profit it makes." *Id.* ¶ 33. Moreover, after Wellpath pays $500,000 for such specialty care, Lake County must pay the bills. *Id.* ¶ 32.

This case began in January 2019, when plaintiff "noticed small, red bumps on the back of his head after he received a haircut in the Lake County jail." *Id.* ¶ 10. Shortly thereafter, "the bumps began to bleed, itch, and spread," causing "pain and discomfort." *Id.* ¶ 11. A doctor with Wellpath, Eric Mizuno, saw plaintiff and gave him ointment. *Id.* ¶¶ 6, 12. Despite Mizuno telling him that the "bumps would go away in about a week," they instead "got worse and bled more." *Id.* ¶¶ 12–13. "Wellpath staff prescribed more creams and ointments" but eventually "told [p]laintiff there was nothing they could do for him and that he should seek outside treatment." *Id.* ¶ 14. "Marchiafava and Weiler repeated this advice on several occasions." *Id.* But "each time" he requested an outside doctor, "Weiler and Marchiafava told [p]laintiff that would not be possible." *Id.* ¶ 15. After some time, plaintiff's "condition deteriorated" and the "bumps morphed into a large keloid" which "look[s] and feel[s] like a horrific burn mark." *Id.* at ¶ 16.

To try and remedy the situation, plaintiff "submitted around 50 medical call slips" but Weiler, Marchiafava, and Mizuno "ridiculed" his keloid and merely gave him more ointment. *Id.* ¶ 18. Plaintiff also had his family research special soap to help, which they found, but Weiler denied his request to have his family send him the soap. *Id.* ¶ 19–20.

In 2022, a new Wellpath doctor, Dr. Papanos, visited plaintiff. "Immediately at the sight of the keloid," Dr. Papanos said "'you guys made me come all the way down here to see that this young man needs help from the outside treatment and fast.'" *Id.* at 21–22 (cleaned up). Plaintiff thereafter "filed more grievances" which Weiler denied, stating that getting help for the keloid would be a mere "'cosmetic procedure.'" *Id.* at 23. Defendant "Marchiafava also told [p]laintiff that they would not treat him

because he is charged with first-degree murder and because they, *i.e.*, Wellpath, do not want to spend the money." *Id.* ¶ 24.[2]

"Due to his condition, [p]laintiff has not been able to sleep soundly since 2019." *Id.* ¶ 26. Because of "overcrowding at the Lake County jail," plaintiff has been housed in the McHenry County jail since January 18, 2024. *Id.* ¶ 28. Plaintiff "has been told by providers at McHenry that his keloid treatment is the responsibility of the" Lake County Sheriff's Office. *Id.*

With that background, the court turns to defendants' motions to dismiss.

## ANALYSIS

Plaintiff has sued all defendants under 42 U.S.C. § 1983. Section 1983 provides for suits alleging the deprivation of federal rights by state officials/municipalities, under certain circumstances. In this case, plaintiff alleges that all defendants were deliberately indifferent to his medical needs, in violation of U.S. Const. Amend. VIII. The court first addresses the issue of whether an Eighth Amendment claim is proper, given that plaintiff is in pretrial custody. The court then addresses the two motions to dismiss in turn, denying the first and striking the second.

## I.     Plaintiff's Status As A Pretrial Detainee

Pretrial detainees receive protection against inadequate medical care under the Fourteenth Amendment's due process clause. *See Zemlick v. Burkhart*, 164 F.4th 1004, 1010 (7th Cir. 2026). Convicted prisoners receive a similar protection under the Eighth Amendment. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 350 (7th Cir. 2018). Plaintiff has brought claims for prospective and retrospective relief under U.S. Const. Amend. VIII.  But, as the court explained previously in this case, "[b]ecause [p]laintiff is a pretrial detainee, his claim is governed by the Fourteenth Amendment," not the Eighth. [24] at 3. Plaintiff's complaint thus cites the wrong constitutional amendment.

At this stage, the court does not dismiss the case because of this error, noting also that defendants do not raise it. *See* [121] at 2–4; [123] at 4–5.  At the pleading stage, the plaintiff must merely "allege 'enough facts to state a claim to relief that is plausible on its face.'" *Thomas*, 74 F.4th at 523 (quoting *Twombly*, 550 U.S. at 570). There is, by contrast, no requirement to "state a legal theory," and "specifying an incorrect theory is not fatal." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). Rather, when evaluating a motion to dismiss, the court just asks "whether relief is possible" based on the face of the complaint. *Id.*

---

[2] The court notes that at the pleading stage it must take all these allegations as true. The recitation of these allegations does not constitute a factual finding.

There is every reason to believe that if relief is possible under the Eighth Amendment, it is possible under the Fourteenth Amendment too; thus, the parties' Eighth Amendment briefing suffices for now. The Seventh Circuit has made clear that "pretrial detainees are entitled to at least" as "much protection" under the Fourteenth Amendment as convicted prisoners receive under the Eighth Amendment. *Miranda*, 900 F.3d at 350. In other words, and setting aside the distinction between cases involving pretrial detainees versus those involving convicted prisoners, it should always be the case that where the facts alleged constitute an Eighth Amendment deliberate indifference claim, they also constitute a Fourteenth Amendment denial of medical care claim. Thus, inasmuch as plaintiff has shown "relief is possible" under the Eighth Amendment, he has also logically shown that "relief is possible" under the Fourteenth Amendment. *Bartholet*, 953 F.3d at 1078.

To be sure, Fourteenth Amendment and Eighth Amendment denial of medical care claims "are not coextensive." *Miranda*, 900 F.3d at 352. The most salient—and perhaps only—difference between the two is that to prove an Eighth Amendment deliberate indifference claim, a party must prove the offender acted with sufficient subjective intent to cause harm. *See, e.g.*, *Kingsley v. Hendrickson*, 576 U.S. 389, 400–01 (2015). That stands in contrast to a Fourteenth Amendment denial of medical care claim, which only demands a showing that the offender acted with "objective unreasonableness" towards the medical needs of the detainee. *See, e.g.*, *Miranda*, 900 F.3d at 352; *Kingsley*, 576 U.S. at 396–97. But this difference is obviously immaterial here.

## II. Defendants' Motions To Dismiss

### A. Defendants Lake County and Lake County Sheriff's Office

Defendants Lake County and Lake County Sheriff's Office are both municipalities. Municipalities are only subject to liability under § 1983 in the limited circumstances laid out in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 661 (1978). Generally speaking, *Monell* says that municipalities are only subject to liability where they have engaged in a pattern or practice of misconduct—that stands in contrast to individual state actors who may be sued for isolated events.

"For a *Monell* claim to survive a motion to dismiss, a plaintiff must plead facts that plausibly suggest that: (1) she was deprived of a constitutional right; (2) the deprivation can be traced to some municipal action (i.e., a policy or custom), such that the challenged conduct is properly attributable to the municipality itself; (3) the policy or custom demonstrates municipal fault, i.e., deliberate indifference; and (4) the municipal action was the moving force behind the federal-rights violation." *Thomas*, 74 F.4th at 524 (quotation omitted). "Three types of municipal action satisfy that second prong and support *Monell* liability: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so

permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* (quotation omitted).

In this case, plaintiff alleges that defendants "have a policy and practice of allowing medical staff at the Lake County Jail to fail to provide medical care even" when "they are fully aware of" "[p]laintiff's serious medical needs and the failure of its medical care staff to provide the medical care that [p]laintiff needs, specifically a policy and practice of denying inmates the opportunity to see specialists outside of the jail in order to save money." [62] ¶¶ 39, 50. In their briefing, defendants do not argue that those allegations are insufficient under caselaw interpreting the Eighth Amendment, Fourteenth Amendment, or *Monell*. Rather, defendants' sole claim is that plaintiff did not bring his claim in a timely manner. [121] at 2–4. The court thus limits its discussion to the timeliness of plaintiff's claim. *See, e.g.*, *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (highlighting the importance and requirements of the party-presentation principle).

Plaintiff's action is timely. "Federal law does not set the limitations period in § 1983 actions. Instead, 42 U.S.C. § 1988(a) instructs [federal courts] to look to state law. Specifically, [the court] looks to the limitations period for personal injury actions." *Ray v. Maher*, 662 F.3d 770, 772–73 (7th Cir. 2011) (citations omitted). "In Illinois, that period is two years." *Id.* at 773 (citing 735 ILCS 5/13–202).

In a case like this one, the final accrual date for the statute of limitations is two years after the conduct giving rise to the alleged constitutional harm stops. As the Seventh Circuit explained in *Heard v. Sheahan*, when a plaintiff develops a medical issue and the government continuously refuses to treat the issue, "[e]very day" that the government so refuses "mark[s] a fresh" claim "that cause[s] the statute of limitations to start running anew": "[a] series of wrongful acts creates a series of claims." 253 F.3d 316, 318 (7th Cir. 2001).

*Heard* dealt with an Eighth Amendment claim. And as explained in the previous section, plaintiff's pretrial detainee status means his denial of medical care claim must be housed in the Fourteenth Amendment—not the Eighth. But under either Amendment the claim-accrual analysis is the same. That is because in the same way that "cruel and unusual punishment" is inflicted on a convicted prisoner every day the denial of treatment continues, *id.* at 318, a pretrial detainee's due process rights are violated every day his condition goes untreated. For both, "[e]very day" the prisoner is untreated is a "fresh infliction" that starts the statute of limitations over again. *Id.*

For someone alleging the unconstitutional denial of medical care, it will often be the case that their accrual date is when they are released from jail or prison, because that is when their care is no longer subject to the discretion of the state. *See, e.g.*, *Devbrow v. Kalu*, 705 F.3d 765, 770 (7th Cir. 2013); *Wilson v. Wexford Health*

5

*Sources, Inc.*, 932 F.3d 513, 517–18 (7th Cir. 2019). That is true in this case. Plaintiff is still in jail, and he alleges that his care remains constitutionally inadequate as part of a pattern or practice by Lake County Sheriff's Office and the Lake County jail. If he can prove that, then, as in *Heard*, "[e]very day" that he has remained in jail with inadequate care has "caused the statute of limitations to start running anew." 253 F.3d at 318. Plaintiff filed suit while he was still in jail and still allegedly being denied adequate care; therefore, his complaint is timely.

Defendants argue that there is a timing issue by recharacterizing plaintiff's constitutional claim as one for medical malpractice and then arguing the medical malpractice claim is untimely. That is because plaintiff discovered his medical issue well over two years ago in 2019, and medical malpractice claims must be brought within two years of the plaintiff discovering the injury. *Heard*, 253 F.3d at 318. But such an argument does not persuade the court, just as it did not persuade the Seventh Circuit in *Heard*. *See id.* The facts of *Heard* are materially identical.[3] In that case, the plaintiff discovered that he had a hernia. *Id.* at 317. His doctor diagnosed him and recommended surgery, but the state refused to provide care. *Id.* But the refusal to provide certain care was not a medical malpractice claim so it did not accrue on the date Heard was diagnosed; rather, his constitutional claim accrued anew every day, as explained above. *See id.* at 317–18. This case is no different: it concerns a medical issue discovered years ago, coupled with complaints about that issue and the state's alleged unwillingness to treat it. There is thus no reason to depart from *Heard*'s holding here.

Defendants' further arguments all rely on the incorrect premise that plaintiff's claim is a medical malpractice claim. If that premise were true, the court would need to answer a complicated issue about the relation back doctrine. *See* [121] at 2–4. But that premise is incorrect, so there is no need to reach the issue.

Accordingly, defendants' motion to dismiss [121] is denied.

### B.    Defendants Weiler and Marchiafava

Plaintiff also argues that the Wellpath employees responsible for managing Wellpath and/or his care have violated his rights. Plaintiff seeks both damages for past harm, and an injunction requiring these employees to treat his keloid moving forward. Defendant has only moved to dismiss the request for injunctive relief. *See* [123] at 1 n.1.

The court cannot decide whether defendant is entitled to dismissal for failure to state a claim. "A ruling under Rule 12(b)(6) concerns the merits." *Brownback v. King*, 592 U.S. 209, 216–17 (2021). But courts may not make merits judgments when

---

[3] Like here, *Heard* dealt with a motion to dismiss so the facts were merely alleged and taken as true by the Seventh Circuit. *Id.*

they lack jurisdiction over a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998); *see also Brownback*, 592 U.S. at 218.[4] The potential jurisdictional defect in this case is standing. Standing is a requirement, stemming from U.S. Const. Art. III, that a litigant has "claim[ed] to have suffered an injury that the defendant caused and the court can remedy." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). Crucially, standing is remedy specific. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983).[5] The court has no doubt that plaintiff has standing to seek damages against defendants Weiler and Marchiafava. But the present record indicates that plaintiff lacks standing to seek an injunction against those defendants because he has not alleged, nor does anything suggest, that he is "likely" to be transferred back to a facility where they could impact his care. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).

To prevail on a Fourteenth Amendment denial of medical care claim, plaintiff would need to prove, among other things, that Weiler and Marchiafava left an "objectively serious" medical condition untreated. *Miranda*, 900 F.3d at 347. But requesting injunctive relief in addition to damages complicates the issue. Injunctions, by their very nature, serve to ward off future and ongoing harms—not remediate past ones. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *see also* Samuel L. Bray, *The System of Equitable Remedies*, 63 UCLA L. Rev. 530, 552–53 (2016). "In the main," "injunctions and damages remedy different sets of injuries. When an injury has yet to occur, but a plaintiff offers good reason to think it will soon . . . or is occurring," "he can seek redress prospectively through an injunction." *Wells v. Johnson*, 150 F.4th 289, 300 (4th Cir. 2025) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–60 (2014)). "But when the complained-of event has come and gone, it is too late for an injunction." *Id.*

"That [plaintiff] may have" had his rights violated by Weiler and Marchiafava in the past, "while presumably affording [him] standing to claim damages," "does nothing to establish a real and immediate threat that he w[ill] again be" harmed by Weiler and Marchiafava. *Lyons*, 461 U.S. at 105. And plaintiff has not, under precedent, made the requisite showing of a "real and immediate threat" that he will

---

[4] There is a slight exception to the no-merits-before-jurisdiction rule for cases "where a plaintiff fails to plausibly allege an element that is both a merit element and a jurisdictional element." *Brownback*, 592 U.S. at 218 n.8. But the contours of that rule are unclear because of limited precedent. As such, the court does not opine on whether the exception applies here and instead errs on the side of tackling jurisdictional issues first. *See Steel Co.*, 523 U.S. at 94.

[5] The court does not, today, provide a full exposition on standing doctrine and its many vagaries.

once again be harmed by Weiler and Marchiafava. *Id.* That means he lacks standing to seek an injunction against them. This conclusion bears a bit more explanation.

Plaintiff alleges that Weiler and Marchiafava gave him inadequate medical care *in the past*. [62] at 6–7. According to plaintiff, however, he is no longer under their care because he has been transferred to a facility they do not service. [62] ¶¶ 3–4, 28. There is thus no chance, based on plaintiff's complaint, that Weiler and Marchiafava could violate plaintiff's Fourteenth Amendment rights again. Assuming that's the entire standing story, the result would be obvious—it would be clear that regardless of "the injunction," "the allegedly wrongful behavior could not reasonably be expected to recur." *Vitek v. Jones*, 445 U.S. 480, 487 (1980) (quotation omitted). When that's true, there is no standing to sue for injunctive relief. *See Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988); *see also Lyons*, 461 U.S. at 101–03.

But facts outside the four corners of the complaint make the standing inquiry slightly more difficult. Plaintiff pointed out in his briefing that he "can be moved back to the Lake County Jail at any time" and that "the docket in this case reflects that even during the pendency of this case [p]laintiff has been returned on occasion to be housed in the Lake County jail." [129] at 4. The question, then, is whether that possibility of transfer is likely enough to constitute an imminent injury that satisfies the standing requirement. *See Susan B. Anthony List*, 573 U.S. at 158.

The possibility of transfer is not likely enough. The Seventh Circuit has explained what a prisoner must show to demonstrate standing to sue for an injunction against prison staff after being transferred away from those prison staff. Under precedent, "[i]f a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison" is insufficient to satisfy the Art. III standing requirement "unless 'he can demonstrate that he is *likely to be retransferred.*'" *Higgason*, 83 F.3d at 811 (emphasis added) (quoting *Moore*, 862 F.2d at 150). What is more, "[a]llegations of a likely retransfer may not be based on mere speculation." *Id.* (citing *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975)).

Starting with plaintiff's first factual claim: that he "can be moved back to the Lake County Jail at any time." [129] at 4. Under precedent, that a prisoner is "subject to the 'whims' of the state's department of corrections"—*i.e.*, that the state has the power to retransfer the prisoner generally—is insufficient to prove up standing. *Moore*, 862 F.2d at 149. Moving to plaintiff's second factual claim: that he has been "returned on occasion to be housed in the Lake County jail," so it can happen again. [129] at 4. The record supports two relevant facts: first, that plaintiff was originally moved because of overcrowding, *see* [62] ¶ 28; second, that he was moved back to the Lake County jail on one occasion, *see* [88] at 5. But the burden of proving standing is on plaintiff. *See Moore*, 862 F.2d at 150; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). And plaintiff has not given the court reason to think Lake County jail is any less crowded now than it was when he was transferred. Nor does one sojourn in the last two years, in the court's estimation, make another "likely" to happen again.

*Moore*, 862 F.2d at 150 ("the court must estimate the likelihood that those events will occur."). Those facts do not prove up standing.

Admittedly, the court lacks many data points to guide its estimation. In *Vitek*, the Supreme Court affirmed the district court's judgment. The district court found that the threat of transfer was sufficiently high when the prisoner would be transferred if a mental health condition—which, based on the prisoner's medical history, the court had reason to think would flare up again—were to flare up again. *See Vitek*, 445 U.S. at 486. In other words, transfer was based on the occurrence of an event, and facts demonstrated that the event was likely to occur. In *Moore*, the Seventh Circuit found that the threat of transfer was not sufficiently high. But the *Moore* court had less evidence than this court does: "[t]here [wa]s no indication why [the] plaintiff . . . was transferred from [his original prison], and no reason on the [ ] record [the Seventh Circuit had] to suppose that he [wa]s likely to be sent back" to that prison. 862 F.2d at 150. The court is in between these data points, and other cases don't provide much insight. But the facts of this case are more like *Moore*. Any notion that the overcrowding at Lake County jail will dissipate is purely speculative. And there is no obvious reason why one previous retransfer makes a second "likely" to happen again. *Id.* Plaintiff, then, has not demonstrated that he has standing to seek an injunction.

All that said, the court is cognizant of the fact that neither party raised standing. Moreover, whether plaintiff has standing is fact intensive for the reasons described above. Thus, on this record, the court is not assured that the jurisdictional "defect is clearly incurable." *Shockley v. Jones*, 823 F.2d 1068, 1073 (7th Cir. 1987). As such, outright dismissal is unwarranted. *See also Young v. Lane*, 922 F.2d 370, 373–74 (7th Cir. 1991) (remanding for factfinding on the likelihood of transfer where the parties had not briefed the issue). So rather than dismiss, the court strikes the pending motion [123] to allow the parties sufficient time to conduct jurisdictional discovery and then "argue the jurisdictional issue." *Shockley*, 823 F.2d at 1073.

*SO ORDERED.*

Dated: March 23, 2026                    /s/ Martha M. Pacold

9